IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RAYMOND D. MASSENBURG, )
)
    Plaintiff, )
)
v. ) Civil Action No. **3:08CV106**
)
VANESSA P. ADAMS, *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION

Plaintiff, a federal prisoner formerly housed at the Petersburg Federal Prison Camp ("FPC Petersburg"), brings this *Bivens*[1] action alleging that the Defendants violated his First Amendment[2] right to exercise his religion. Plaintiff is proceeding *pro se* and *in forma pauperis*. This matter comes before the Court on motions to dismiss filed by Defendants Adams and Sharpe, and on Plaintiff's motions for summary judgment.

### I. Plaintiff's Claims

Plaintiff names the following individuals as defendants in their official and unofficial capacities: VaNessa P. Adams, Warden of the Petersburg Federal Correctional Complex; Laurene G. Sharpe, Camp Administrator at FPC Petersburg; and Larry Moody, Plaintiff's Unit Manager at FPC Petersburg.

Plaintiff is a member of the House of Israel, and observes the Sabbath from sundown Friday to sundown Saturday. Defendant Moody changed Plaintiff's job assignment from safety

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I.

to the power plant. Plaintiff informed Defendant Moody that he could not work on the Sabbath, and obtained the supervisor's approval to work the morning shift, which would not conflict with the Sabbath. Defendant Moody did not give his approval, instead claiming that he needed something from the chaplain. Plaintiff then "wrote a cop-out to the chaplain."[3] (Compl., Statement of Claim ¶ 14.)

The following day, Plaintiff approached Defendant Moody, Defendant Sharpe, and Chaplain Jahr while they were waiting in the lunch line. Plaintiff told the officers that he "needed to talk to them to get my Sabbath day issue straight." (Compl., Statement of Claim ¶ 16.) Moody refused to address the issue, claiming that he had already done all he needed to do. Plaintiff's schedule was not changed, and he began working on Sabbath days beginning on Saturday, July 22, 2006. Plaintiff filed a grievance to Defendant Adams, which was rejected.[4]

Plaintiff then filed a "Bp8½ to Moody for the Sabbath day." (Compl., Statement of Claim ¶ 22.) Moody responded verbally, indicating that he had spoken with a chaplain and would grant a schedule change. Moody, however, moved Plaintiff to the evening shift, which required him to work during the Sabbath on both Friday and Saturday. Plaintiff explained this to Moody, who "shrugged his shoulders and [said] 'whatever' and walked off." (Compl., Statement of Claim ¶ 27.)

Plaintiff filed a second grievance to Defendant Adams. Subsequently, Defendant Moody called Plaintiff into his office on Defendant Adams's orders. Moody asked Plaintiff which shift

---

[3] No party fully explains the terminology, but the terms "BP8 (or cop-out)," "BP8½," and "BP9" appear to refer to grievance forms utilized within the FCC Petersburg system.

[4] Plaintiff claims in his motion for summary judgment that this grievance was rejected because Plaintiff had not first filed a "BP 8½." (Br. Supp. Aug. 26, 2009 Mot. Summ. J. 3.)

would accommodate his Sabbath. Plaintiff asked for the morning shift, and the change was made. Defendant Moody asked if this change resolved Plaintiff's grievance to Defendant Adams. Plaintiff replied that it resolved the problem, but did nothing for the days already violated. Defendant Adams subsequently ruled that Plaintiff's grievance was unfounded because he was not scheduled to work during his Sabbath.

Plaintiff seeks actual damages in the amount of $1,095,000, from each Defendant, and $1,000,000 in punitive damages from each Defendant.

## II. Defendants' Motions to Dismiss

In their motions to dismiss, Defendants Adams and Sharpe argue that Plaintiff has not shown that they were personally involved in any constitutional violation, and that they are entitled to qualified immunity. The motions to dismiss will be denied because they raise an issue of fact more appropriately decided on a motion for summary judgment.

### A. Standard on Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

4

B. <u>Liability of Supervisors in *Bivens* Actions</u>

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).[5] "The factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." *Id.* Thus, in *Iqbal*, where the claim involved "invidious discrimination in contravention of the First and Fifth Amendments . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* (citing cases). Here, Plaintiff alleges that Defendants violated his right to the free exercise of his religion under the First Amendment. Thus, to state a claim, Plaintiff must allege facts that suggest Defendants violated the Free Exercise Clause by imposing a substantial burden on the practice of his religion. *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006); *Couch v. Jabe*, 479 F. Supp. 2d 569, 584 (W.D. Va. 2006).

Government officials impose a substantial burden on the free exercise of religion by "'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace*, 472 F.3d at 187 (*quoting Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Additionally, some courts have found that each defendant's actions must amount to a "conscious or intentional interference with [the plaintiff's] free exercise rights." *Id.* at 201; *see also T.E. v. Grindle*, --- F.3d ----, 2010 WL 938047, at *4 (7th Cir. Mar. 17, 2010) (concluding that, after *Iqbal*, a supervisor in a *Bivens* actions is not liable for the actions of a

---

[5] The Supreme Court has "not found [in a *Bivens* action] an implied damages remedy under the Free Exercise Clause." *Iqbal,* 129 S. Ct. at 1948. The Court, however, has assumed, without deciding, that a *Bivens* action under the First Amendment is actionable. *See id.* (*citing Hartman v. Moore,* 547 U.S. 250, 254 n.2 (2006)).

5

subordinate unless both share the requisite mental state); *Argueta v. U.S. Immigration & Customs Enforcement*, No. 2:08cv01652, 2010 WL 398839, at *6-7 (D.N.J. Jan. 27, 2010) (citing cases and discussing impact of *Iqbal* when someone other than a person at the "'highest level of the federal law enforcement hierarchy'" is sued, 129 S. Ct. at 1943).

Defendants Adams and Sharpe argue that the complaint does not adequately allege that they were personally involved in any deprivation of Plaintiff's rights. Read in the light most favorable to Plaintiff, both Adams and Sharpe knew Plaintiff's religion prohibited him from working on the Sabbath. Both Sharpe and Adams also knew that the Plaintiff's work assignment required that he work on the Sabbath or face punishment.[6] The complaint further suggests that in their respective positions as Camp Administrator and Warden, Sharpe and Adams had the authority and responsibility to intervene and remedy the alleged violation of Plaintiff's free exercise rights, yet they stood indifferent. Such allegations are sufficient, at this juncture, to establish a personal involvement by Adams and Sharpe. *See Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

### C.     Qualified Immunity

Defendants Adams and Sharpe also claim entitlement to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified

---

[6] Sharpe knew the foregoing facts because Plaintiff raised the complaint in her presence. Adams knew these facts because Plaintiff wrote a grievance in which he requested that she intervene.

immunity is 'an immunity from suit rather than a mere defense to liability,'" *id.* (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and accordingly should be resolved "'at the earliest possible stage in litigation.'" *Id.* (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Defendants seeking qualified immunity must establish two elements. If the facts alleged by the plaintiff fail to demonstrate a constitutional violation, qualified immunity applies. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff does allege a constitutional violation, qualified immunity applies unless "the contours of the right were clearly established such that 'a reasonable official would understand that what he [was] doing violate[d] that right.'" *Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002) (alterations in original) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "For a constitutional right to be clearly established in a given case, the right's contours must be so clear that every, objectively reasonable official must understand that what the defendant, in the context of the circumstances of the case, is doing clearly violates the right." *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) (*citing Vinyard v. Wilson*, 311 F.3d 1340, 1353 (11th Cir. 2002)). While the plaintiff must show that a constitutional violation has occurred, the defendant bears the burden at the second step of showing that his or her conduct was objectively reasonable. *Henry v. Purnell*, 501 F.3d 374, 378 (4th Cir. 2007) (citations omitted).[7]

The heart of Defendants' qualified immunity argument rests on their claim of lack of personal involvement rather than on an assertion based on the nature of the constitutional right at

---

[7] The doctrine of qualified immunity extends equally to suits brought pursuant to either *Bivens* or 42 U.S.C. § 1983. *See Butz v. Economou*, 438 U.S. 478, 507 (1978); *Ehrlich v. Giuliani*, 910 F.2d 1220, 1222 n.2 (4th Cir. 1990).

issue.[8] Essentially, Defendants argue that, under any interpretation of Plaintiff's claim, their actions must have been constitutional because, given their limited involvement, no "reasonable officer" would think his or her "conduct was unlawful in the situation [ ] confronted." *Saucier*, 533 U.S. at 202. As discussed above, Plaintiff alleges that he informed Defendants Sharpe and Adams that Defendant Moody forced Plaintiff to violate the Sabbath. Defendants Sharpe and Adams have failed to demonstrate that they could not have prevented Defendant Moody's actions. Moreover, Defendants have failed to explain why their actions comported with the relevant constitutional principles. Indeed, they have largely failed to identify the source and scope of Plaintiff's rights with respect to the observance of the Sabbath.

If Defendants wish to invoke qualified immunity to this First Amendment claim, they must: (1) identify the specific right allegedly violated; (2) brief, with full pinpoint citation to authority, whether the right was so clearly established as to put a reasonable official on notice of his legal obligations; and, (3) describe to the Court the factual scenario supporting the assertion that a reasonable official in Defendant's situation would have believed his conduct was lawful. *See Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990). Defendant Adams's motion to dismiss

---

[8] In her reply, Sharpe contends that Plaintiff adds an allegation (in briefing only) that Sharpe circumvented the BOP's administrative remedy program. (Sharpe's Reply Br. 2.) Sharpe contends that this allegation cannot support a claim for relief because Plaintiff has no constitutional right to the administrative remedy process. Even presuming that to be true, the thrust of Plaintiff's primary claim is that he was denied the right to the free exercise of his religion. *See Beaudett*, 775 F.2d at 1278 ("Where the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern.")

Sharpe fails to address in her qualified immunity defense any discussion of the First Amendment jurisprudence for such a claim. The bulk of her argument is devoted to the assertion that she lacked personal involvement. Sharpe's argument as to personal involvement lacks merit for the reasons discussed above.

(Docket No. 42) and Defendant Sharpe's motion to dismiss (Docket No. 58) will be DENIED WITHOUT PREJUDICE to raising the arguments in a motion for summary judgment.

### III. Plaintiff's Motions for Summary Judgment

Plaintiff has filed two motions for summary judgment, both of which will be dismissed because he has failed to produce any admissible evidence in support of his allegations.

#### A. Standard for Summary Judgment

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless,"'Rule 56 does not impose upon the district court a duty to sift

9

through the record in search of evidence to support a party's opposition to summary judgment.'"
*Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953
F.2d 909, 915 & n.7 (5th Cir. 1992)).

Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. 56(e). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that affiant is competent to testify on the matters stated." Fed. R.Civ. P. 56(e)(1). Furthermore, summary judgment affidavits must "set out specific facts." Fed. R. Civ. P. 56(e)(2). Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citation omitted) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting the summary judgment analysis. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (quotation omitted). Moreover, courts should not consider on summary judgment facts alleged in unsworn filings. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (emphasizing that unsworn argument does not constitute evidence).

### B. Plaintiff's Motions for Summary Judgment

The Court must deny Plaintiff's motions for summary judgment because Plaintiff has failed to place any competent evidence before the Court. Plaintiff has not sworn to either motion under penalty of perjury, nor has he submitted an affidavit in support. Although Plaintiff has produced copies of grievance records, the Court may not consider them because Plaintiff has

10

failed to authenticate them. *See Maidstone on Potomac, LLC v. CSX Transp., Inc.*, Civil Action No. 3:08-CV-155, 2009 WL 2168205, at *3 (N.D. W. Va. July 21, 2009) ("When a party seeks to offer evidence through [exhibits other than depositions, answers to interrogatories, admissions, or affidavits], they must be identified by affidavit or otherwise made admissible in evidence." (*quoting Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985))); *Rogers v. Ford Motor Co.*, 952 F. Supp. 606, 610-11 (N.D. Ind. 1997) (granting motion to strike exhibits in Plaintiff's response to motion for summary judgment where attachments were not authenticated and therefore inadmissible). Additionally, Plaintiff's complaint is not sworn, and the allegations therein cannot be considered as evidence.[9] Plaintiff's motions for summary judgment (Docket Nos. 50, 62) will be DENIED WITHOUT PREJUDICE to resubmit.

## IV. Conclusion

The motions to dismiss by Defendant Adams (Docket No. 42) and Defendant Sharpe (Docket No. 58) will be DENIED WITHOUT PREJUDICE to raise their arguments in a motion for summary judgment. Plaintiff's motions for summary judgment (Docket Nos. 50, 62) will be DENIED WITHOUT PREJUDICE to resubmit with appropriate evidence.

Any further dispositive motions must be filed within forty-five (45) days of the date of entry hereof.

It is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 3-31-10

---

[9] Although Plaintiff attached an affidavit to his complaint, the affidavit is not signed. (Compl., Aff. Supp. of Compl. 3.)

11